IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LOUIS RAY MARCHETTI,

    Plaintiff,
v.                                          CASE NO. 1:20-cv-30-RH-GRJ

OFFICER ROSS, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter comes before the Court *sua sponte* for screening pursuant to the *in forma pauperis* statute, 28 U.S.C. § 1915(e). Plaintiff, an inmate in the custody of the Florida Department of Corrections proceeding *pro se* and *in forma pauperis* in this civil rights action, alleges in his Complaint that beginning on May 23, 2019, at the Cross City Correctional Institution ("Cross City C.I."), he was subject to unconstitutional excessive force and deliberate medical indifference by Defendants David Suro and Elmer Ross, as well as three unidentified "John Doe" corrections officers. ECF No. 1. Plaintiff also names "John Doe, Warden" for Cross City C.I. as a Defendant. *Id.* at 1–2. For the reasons explained below, it is respectfully **RECOMMENDED** that Plaintiff's claims against the "John Doe, Warden" for

Cross City C.I. should be **DISMISSED without leave to amend** for failure to state a claim.

## I. BACKGROUND

Plaintiff alleges in the Complaint that on May 23, 2019, "at approximately 11:45 a.m.[,]" he was working in food service at Cross City C.I. when he was handcuffed with hands behind his back for suspicion of using a controlled substance. ECF No. 1 at 5. Defendant Ross and, eventually Defendant Suro, escorted Plaintiff to a small room adjacent to the entryway of a housing dorm. *Id.* at 5–6. Once inside, three unidentified officers entered the room and closed the door. *Id.* at 6. Defendants Suro and Ross, as well as the unidentified officers, put on latex gloves, surrounded Plaintiff, and proceeded to strike him. *Id.* Defendant Ross then escorted Plaintiff from the small room, removed the handcuffs, and threatened him, stating: "If you say anything, you'll get it ten times worse. Now to go to your dorm and get on your bunk." *Id.* Plaintiff followed these directions and proceeded to his bunk. *Id.*

Plaintiff experienced a sharp pain and blurred vision in his right eye following the alleged incident and declared a medical emergency on May 26, 2019. *Id.* At the insistence of a nurse in the facility's medical department, Plaintiff explained how he was injured by Defendants Ross

and Suro. *Id.* at 7. The nurse called "Captain White," who arrived at the medical department with a camera and asked Plaintiff to "relay the facts surrounding the assault." *Id.* Captain White then photographed Plaintiff's right eye, documented his injuries, and told Plaintiff he would be placed in confinement to prevent retaliation pending an investigation by the Inspector General. *Id.* "Inspector Barcia" interviewed Plaintiff "[a]pproximately two weeks later[,]" and Plaintiff provided a sworn recorded statement, as well as new photographs of his eye. *Id.* Finally, at an undetermined time following Plaintiff's interview, he was issued a "warden transfer" to Walton Correctional Institution.

The *in forma pauperis* statute authorizes the Court to dismiss a claim "at any time if the [C]ourt determines that … the action … (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Shortly after Plaintiff initiated this case, the Court screened the Complaint pursuant to § 1915(e)(2) and directed service of process on Defendants Suro and Ross, as well as Milton Hicks, the warden for Cross City C.I. at the time of the alleged actions giving rise to this case. ECF No. 9. Defendants Suro and Ross were served, appeared through counsel, and filed an Answer. ECF Nos. 13, 14, 16. The summons for Mr.

Hicks was returned unexecuted on February 25, 2020, because he retired from the Department of Corrections that same month. ECF No. 12.

The undersigned, thereafter, screened the Complaint again to consider the sufficiency of the claims against the unidentified warden. On May 8, 2020, for the reasons explained below, the Court entered an order directing Plaintiff to show cause why the warden should not be dismissed as a party because Plaintiff has failed to state a claim against him in his individual and official capacities. ECF No. 17. The Court explained to Plaintiff its concerns regarding the sufficiency of Plaintiff's allegations and afforded him the opportunity to file: (1) a memorandum in support of his allegations; (2) a motion for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15; or (3) a motion to drop the warden as a Defendant pursuant to Federal Rule of Civil Procedure 21. *Id.* at 2–5. To this date, Plaintiff has failed to respond to the Court's order.

## II. LEGAL STANDARD

To plead a cause of action, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requires a plaintiff to assert "sufficient factual matter" that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility

standard is met only where the facts alleged enable the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). Mere labels and conclusions are insufficient. *Iqbal*, 556 U.S. 662 at 678. The Court will not penalize a *pro se* litigant for "linguistic imprecision," *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008), but a cause of action must be discernable. A court does not have "license to … rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by, Iqbal*, 556 U.S. 678.

To state a claim for the violation of the United States Constitution under 42 U.S.C. § 1983, Plaintiff must allege two essential elements: (1) that he was deprived of a right secured by the Constitution or federal law; and (2) that the deprivation occurred under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999).

### III. DISCUSSION

Upon careful consideration of the Complaint, the undersigned concludes that the warden is due to be dismissed as a defendant because Plaintiff fails to state a claim against him. First, it appears that Plaintiff does not attempt to state a claim against the warden in his *individual capacity*

because Plaintiff does not allege that Mr. Hicks, as warden, personally participated in any purported unconstitutional acts. *See Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381, 382 (5th Cir. 1980) ("The claim against Vowell in his individual capacity was dismissed because of the absence of any indication that he personally participated in any alleged wrongdoing."). Indeed, the Complaint does not name Mr. Hicks specifically and the only mention of the "warden" in the Complaint—other than as a named defendant—is that Plaintiff was "issued a warden transfer from [Cross City C.I.] to Walton Correctional Facility." ECF No. 1 at 7.

Plaintiff, alternatively, does not satisfy the "extremely rigorous" standard to impose supervisory liability on Mr. Hicks under § 1983. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). A plaintiff seeking to hold a supervisor liable for constitutional violations may do so by showing that a causal connection exists between the supervisor's actions and the alleged constitutional violation. *Id.* As the Eleventh Circuit explained in *Cottone*:

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act

>unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* (alterations adopted and internal citations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). In short, there are no plausible allegations in Plaintiff's Complaint that Mr. Hicks, as warden, ignored a history of widespread abuse, established a custom or policy resulting in the alleged wrongdoing, or directed his subordinates to act unlawfully.

Finally, the warden of Cross City C.I. in his or her *official capacity* enjoys Eleventh Amendment immunity from Plaintiff's § 1983 claims for damages because any such claim would be one against the State of Florida. *See* U.S. Const., amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) ("Although by its terms the Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suits by citizens against their own States."); *Will v. Mich. Dep't of State*

7

*Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); *see also Lawson v. Gillman*, No. 5:15-cv-308-WTH-GRJ, 2017 WL 5633287, at *3 (N.D. Fla. June 12, 2017), *report and recommendation adopted*, 2017 WL 5633210, at *1 (Nov. 22, 2017) (applying Eleventh Amendment sovereign immunity to official capacity claims against a Florida Department of Corrections warden).

The only remaining question is whether Plaintiff should be granted leave to amend the Complaint. Ordinarily, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend "should be freely given," Fed. R. Civ. P. 15(a). A district court, nevertheless, may properly deny leave to amend the complaint when such amendment would be futile. *Foman*, 371 U.S. at 182. Because Plaintiff did not respond to the Court's May 8, 2020, order directing him to explain his allegations against the warden or file a motion for leave to amend the Complaint, the undersigned concludes that granting Plaintiff any further leave to amend would be futile.

8

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that any claims against Defendant "John Doe, Warden" for Cross City C.I in the Complaint, ECF No. 1, should be **DISMISSED without leave to amend** for failure to state a claim upon which relief may be granted.[1]

**IN CHAMBERS** this 9th day of June 2020.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

---

[1] To be clear, this report and recommendation neither addresses nor disposes of Plaintiff's claims against Defendants Suro and Ross.  The parties may proceed with discovery and dispositive motions on those claims once the Court enters a Case Management and Scheduling Order.